COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

TOM RETZLAFF,                              §

    Appellant,          §

v.                                        §

                        §

GOAMERICA COMMUNICATIONS
CORPORATION, AARON DAVID          §
DUBRINSKI, JOHN AND/OR JANE
DOE,                                      §

    Appellees.         

No. 08-09-00115-CV

Appeal from the

County Court at Law Number Three

of Bexar County, Texas

(TC# 338432)

**O P I N I O N**

Tom Retzlaff appeals from orders dismissing a suit and declaring him a vexatious litigant.  We vacate in part, affirm in part, reverse in part, and remand.

GoAmerica Communications Corporation provides telephone relay services to hearing-impaired and speech-impaired individuals.[1]  Retzlaff sued GoAmerica in propria persona, alleging that it relayed a profane and threatening call to his telephone in the middle of the night. He sought damages for intentional infliction of emotional distress and negligence.  In addition to GoAmerica, Retzlaff named Aaron David Dubrinski and John and/or Jane Doe as defendants. Dubrinski filed a special appearance, identifying himself as the chairman and founder of GoAmerica (and noting that the correct spelling of his name is "Dobrinsky").  The record does

---

[1] According to GoAmerica, it hosts a website where individuals can instruct it to place a particular call.  A GoAmerica operator "places the call to the recipient, then acts as a real time translator on behalf of the user who inputs the conversation text into a web-based dialogue box such that the . . . [o]perator can read the text to the call recipient."

not include a ruling on the special appearance.  In his petition, Retzlaff described John and Jane Doe as unidentified GoAmerica employees who placed the offending call.  The record does not demonstrate that these defendants were ever served.

GoAmerica filed a motion to declare Retzlaff a vexatious litigant.  The motion was served on Retzlaff by fax on June 24, 2008.  That evening, Retzlaff sent David Denton, one of GoAmerica's attorneys, an email, claiming that the fax was too big for his fax machine to handle and that, as a result, he only received the first few pages of the motion.  Retzlaff also stated that he intended to sue Denton and his law firm in small claims court for damage to the fax machine. The email, which was replete with vulgar language and exclamation points, included the following passage:

> I am really, really pissed off at you, David.  So pissed off that I just may come down to your office to personally explain to you just how angry that I am!  You screwed up my fax machine even though I specifically told you not to be sending me such large faxes.

Two days later, at noon on June 26th, GoAmerica filed a motion for an expedited hearing on the vexatious litigant motion.  As the basis for this motion, GoAmerica relied on Retzlaff's email.  GoAmerica characterized the email as "abusive and threatening," and requested an expedited hearing "because of the continuing threats of additional vexatious lawsuits and the continuing threats to needlessly increase the cost of litigation."  The motion requested that the hearing be set for the morning of June 27, 2008.  In the alternative to an expedited hearing, GoAmerica requested that the court "enter temporary orders" to prohibit Retzlaff from appearing at Denton's law firm's offices and from filing any litigation in any court without first obtaining permission of the local administrative judge.  The motion was emailed to Retzlaff, and

GoAmerica requested permission to serve notice of the expedited hearing on Retzlaff by email.[2]

At 2:13 p.m. on June 26th, the court filed an order staying the case and prohibiting Retzlaff from filing any motions or from filing any litigation in this state unless the local administrative judge grants him permission. In addition, the order prohibits Retzlaff "from appearing, contacting, communicating, or coming within 150 feet of any past or present officer, director, employee, agent or attorney of GoAmercia, Inc.," or from coming within 150 feet of Denton, his law firm's San Antonio offices, or 30 Rockefeller Plaza in New York.[3] The order does not provide a termination date for any of these prohibitions. The court also granted the motion to expedite, allowed substituted service, and set a hearing for 10:30 the next morning-- June 27, 2008.

Retzlaff appeared on June 27th and announced not ready. He asserted that he had not received the vexatious litigant motion and that he did not get notice of the hearing until 6:30 the previous evening. He also objected to the June 26th order on the grounds that it was rendered ex parte and without any statutory authority. Denton responded to Retlaff's arguments about the order by asserting that Retzlaff is an "ex-con" and, in the portion of the email quoted above, made "a threat against me."[4] Denton stated that he had provided copies of the vexatious litigant motion to Retzlaff by fax, email, and regular mail. Nevertheless, he handed another copy to Retzlaff in open court and in the judge's presence.

---

[2] Retzlaff has a post office box, but refuses to divulge his street address.

[3] This is the address of a law firm that was representing GoAmerica in an "of counsel" capacity. GoAmerica's motion did not ask for this relief or for any relief for GoAmerica's past or present personnel.

[4] Retzlaff admitted that he had served time in prison.

The court allowed GoAmerica to present its argument and evidence on the vexatious litigant motion. However, the court ordered that the hearing would reconvene at 2 p.m. on June 30th (the Monday following June 27th) so Retzlaff could present his arguments and evidence. At the June 30th hearing, Retzlaff presented argument and his own testimony.

On August 22, 2008, the judge sent counsel and Retzlaff an order stating that she had concluded that Retzlaff is a vexatious litigant and that he should be required to post security in the amount of $12,500. On October 15, 2008, the court signed an order reflecting these rulings. The order required Retzlaff to furnish the security within seven days. The order also prohibited Retzlaff "from filing, in propria persona, any new litigation in any state or federal court located in the State of Texas without first obtaining permission of the local administrative judge after the local administrative judge finds that the proposed litigation has merit and is not filed for the purpose of harassment or delay." On November 24, 2008, Retzlaff filed a motion to dismiss without prejudice, noting that he had not furnished the required security. GoAmerica filed a cross-motion to dismiss the case with prejudice as to all defendants. The court granted GoAmerica's motion and dismissed the entire suit with prejudice. Thereafter, the court entered lengthy findings of fact and conclusions of law regarding the determination that Retzlaff is a vexatious litigant, and then entered additional findings of fact and conclusions of law regarding the dismissal of the suit. This appeal followed.

In his second issue, Retzlaff asserts that the trial court conducted an ex parte, off-the-record hearing on June 26th without any notice to him. In considering this issue, it is important to understand what is--and what is not--an ex parte communication:

An ex parte communication is one that concerns the matter, that is between a

lawyer representing a client and a judicial officer, and that occurs outside of the presence and without the consent of other parties to the litigation or their representatives. A written communication to a judicial officer with a copy sent timely to opposing parties or their lawyers is not ex parte. The prohibition applies to communication about the merits of the cause and to communications about a procedural matter the resolution of which will provide the party making the communication substantial tactical or strategic advantage. The prohibition does not apply to routine and customary communications for the purpose of scheduling a hearing or similar communications, but does apply to communications for the purpose of having a matter assigned to a particular court or judge.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 113 cmt. c (2000).

GoAmerica contends that Denton's communication with the court was not ex parte because Denton notified Retzlaff before submitting the motion to expedite. The record reflects that Denton emailed Retzlaff the motion to expedite at 11:20 a.m. on June 26th. He stated, "I am leaving for the Courthouse right now" to request that the motion to expedite be granted. Denton also stated in the email that he had left a phone message for Retzlaff. No time for a hearing on the motion to expedite was stated in the email or in the motion. Even now, there is nothing in the record to indicate when the hearing was held, but it is clear that the court conducted some sort of hearing at which it considered evidence and argument beyond what was included in the motion to expedite. During the June 30th hearing, Retzlaff asked the court about the June 26th proceedings:

| | |
|---|---|
| The Court: | All right. I am not a witness in this case. He brought an email saying that he was in fear, and he didn't want people around him. |

.　　　　.　　　　.

| | |
|---|---|
| Retzlaff: | Was there a court reporter present? |
| The Court: | There may have been a court reporter present, but he -- |
| Denton: | I don't believe -- I don't believe that I requested a record, |

Your Honor.

The Court: Yeah. All right?

Moreover, the court stated in its findings of fact that Denton "felt threatened and was visibly shaken by the comments made in . . . Retzlaff's email" and that Denton was "upset." Nothing in the motion to expedite or its attachments expressed Denton's emotional state, so these factual findings must have been based on some evidence presented to the court at the hearing. The record does not reflect when the order granting the motion to expedite was signed, but it was filed less than three hours after Denton emailed Retzlaff.

It is "[a]n elementary and fundamental requirement of due process" that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). "The notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance." *Id.*. [Internal citations omitted]. "[W]hen notice is a person's due, process which is a mere gesture is not due process." *Id*. at 315, 70 S.Ct. At 657. We conclude that the notice provided here was a mere gesture.

GoAmerica also argues that the June 26th hearing was not ex parte because the motion to expedite was not submitted to influence the trial court and because the merits of the vexatious litigant motion were not considered. GoAmerica relies on *Spigener v. Wallis*, 80 S.W.3d 174 (Tex.App.--Waco 2002, no pet.). That case involved a hearing to approve a receiver's proposed sale at which the judge elected not to hear the merits of the receiver's request and a hearing at which the trial court merely set a final hearing on the receiver's application for confirmation of

-6-

sale.  *See Spigener*, 80 S.W.3d at 181-82.  The appellate court held that these hearings were not ex parte because they did not reach the merits of the suit.  *Id*.

This case would be similar to *Spigener* if all the court had done on June 26th was to set the hearing on the vexatious litigant motion.  *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 113 cmt. c ("The prohibition [against ex parte communications] does not apply to routine and customary communications for the purpose of scheduling a hearing or similar communications . . . .").  But that is not all that the court did.  Instead, it granted a portion of the ultimate relief sought in GoAmerica's vexatious litigant motion by enjoining Retzlaff from filing any future litigation in Texas without obtaining the approval of the administrative judge. The court also enjoined Retzlaff from going to certain places.  This injunctive relief affected Retzlaff's substantive rights.

Finally, GoAmerica argues that even if the communication was ex parte, it was justified by exigent circumstances.  Specifically, GoAmerica asserts, "Plaintiff Retzlaff, an undisputed convicted felon, created an extraordinary and exigent situation by threatening Defendants' counsel."  GoAmerica relies on *Barnes v. Whittington*, 751 S.W.2d 493 (Tex. 1988).

In *Barnes*, the Texas Supreme Court stated, "This court only allows [ex parte] communications in limited, extraordinary emergency situations."  751 S.W.2d at 495 n.1.  As examples of exigent situations, the court cited the Texas Rules of Civil Procedure governing writs of attachment, garnishment, and sequestration.  *See Barnes*, 751 S.W.2d at 495 n.1. Likewise, there are rules governing  injunctive relief.  *See* TEX.R.CIV.P. 680-693a.  These rules are specifically designed to allow emergency relief in exigent circumstances, while protecting the due process rights of all parties.  As detailed below in our discussion of Retzlaff's fifth issue, the

rules were not followed in this case. GoAmerica offers no reason why the rules were not followed. Without any showing as to why these rules were inadequate to protect GoAmerica or Denton, we cannot condone the ex parte hearing that took place here.

Retzlaff's second issue is sustained.

In his fifth issue, Retzlaff contends that the June 26th order violates his constitutional rights, prevented him from contacting witnesses, and was not authorized by the vexatious litigant statutes. The order contains three types of injunctions. First, it stayed this suit and prohibited Retzlaff from filing any motions in the suit. This part of the order was of no consequence because the litigation was statutorily stayed as soon as GoAmerica filed its vexatious litigant motion. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 11.052(a)(West 2002).

Second, the order prohibits Retzlaff "from appearing, contacting, communicating, or coming within 150 feet of any past or present officer, director, employee, agent or attorney of GoAmercia, Inc.," or from coming within 150 feet of Denton, his law firm's San Antonio offices, or 30 Rockefeller Plaza in New York. GoAmerica contends that this part of the order was necessitated by Retzlaff's threatening email. It is, in effect, a restraining order. *See* BLACK'S LAW DICTIONARY 1428 (9th ed. 2009)(defining "restraining order" as "[a] court order prohibiting or restricting violence . . . an order restricting a person from harassing, threatening, and sometimes merely contacting or approaching another specified person.").

The Texas Rules of Civil Procedure set forth specific requirements for the granting of injunctive relief, including ex parte restraining orders. "Texas Rules of Civil Procedure 680 and 684 require a trial court issuing a temporary restraining order to: (1) state why the order was granted without notice if it is granted ex parte; (2) state the reasons for the issuance of the order

by defining the injury and describing why it is irreparable; (3) state the date the order expires and set a hearing on a temporary injunction; and (4) set a bond." *In re Office of the Attorney Gen.*, 257 S.W.3d 695, 697 (Tex. 2008)(orig. proceeding)(internal citations omitted). "Orders that fail to fulfill these requirements are void." *Id*. The trial court's order does not meet these requirements.

Because the order is void and does not contain a termination date, we will vacate it. However, we reject Retzlaff's suggestion that the prohibitions prevented him from rebutting GoAmerica's vexatious litigant motion. Although he points out that he had a right to contact potential fact witnesses, including GoAmerica's past employees, he does not attempt to explain how he would have been able to prevail on the motion if he had been able to contact any of these witnesses. Accordingly, we cannot conclude that the court's error probably caused the rendition of an improper judgment. *See* TEX.R.APP.P. 44.1(a)(1).

The third part of the order prohibited Retzlaff "from filing any litigations in any court located in the State of Texas without first obtaining permission of the local administrative judge after the local administrative judge finds that the proposed litigation has merit and has not been filed for the purpose of harassment and delay." This language is drawn from the vexatious litigant statutes.

Pursuant to these statutes, a defendant may move for an order determining that a plaintiff is a vexatious litigant and requiring the plaintiff to furnish security. *See* TEX.CIV.PRAC.&REM. CODE ANN. § 11.051. Upon the filing of such a motion, the trial court "shall, after notice to all parties, conduct a hearing to determine whether to grant the motion." *Id*. § 11.053(a). The statutes set forth specific criteria that must be established before a vexatious litigant motion can

-9-

be granted. *See id*. § 11.054. The defendant must show that there is no reasonable probability that the plaintiff can prevail in the instant litigation. *See id*. The defendant must also show, by one of several specified ways, that the plaintiff has a history of pursuing frivolous litigation. *See id*. § 11.054(1), (2), (3). "[A]fter hearing the evidence on the motion," the court must order the plaintiff to furnish security for the defendant's benefit if the court determines that the plaintiff is a vexatious litigant. *Id*. § 11.055(a). In addition, "if the court finds, after notice and hearing" that the plaintiff is a vexatious litigant, the court may prohibit the plaintiff from filing, in propria persona, any new litigation in this state. *Id*. § 11.101(a). If the trial court orders this prohibition, the plaintiff may still file a new suit, but only if a local administrative judge determines that the suit has merit and has not been filed for purposes of harassment or delay. *Id*. § 11.102(a).

It is apparent from reading these statutes that they attempt "to strike a balance between Texans' rights of access to their courts and the public interest in protecting defendants from those who abuse the Texas court system by systematically filing lawsuits with little or no merit." *Sweed v. Nye*, 319 S.W.3d 791, 793 (Tex.App.--El Paso 2010, pet. denied). The statutes are carefully crafted to require notice, a hearing, and evidence to establish that the very specific criteria in the statutes have been met. Nothing in the vexatious litigant statutes authorizes a trial court to enjoin a plaintiff from filing litigation based merely on the fact that the plaintiff threatened to sue the defendant's counsel. But as we are about to explain, the court did eventually conduct a valid hearing on GoAmerica's vexatious litigant motion and it entered a valid order, supported by evidence, granting the motion. Therefore, the portion of the June 26th order prohibiting Retzlaff from filing litigation is moot.

Retzlaff's fifth issue is sustained in part and overruled in part.

In his first issue, Retzlaff contends that he did not have proper notice of the June 27th hearing. Generally, any motion to the court for an order and any notice of a hearing on a motion must be served upon the other party at least three days before the hearing. TEX.R.CIV.P. 21. The notice period is enlarged by three days when service is made by fax. TEX.R.CIV.P. 21a. The trial court may, however, shorten the notice period. *See* TEX.R.CIV.P. 21. The court's decision to conduct a hearing before the notice period has expired will not be disturbed on appeal absent an abuse of discretion. *Buruato v. Mercy Hosp. of Laredo*, 2 S.W.3d 385, 387 (Tex.App.--San Antonio 1999, pet. denied). In exercising its discretion, the court may consider any exigent circumstances presented in the case. *Id.* at 388.

GoAmerica attempted to serve the vexatious litigant motion by fax on June 24th. Retzlaff admits that he received the first few pages of the motion at that time. This attempt at service caused Retzlaff to threaten additional litigation for alleged damage to his fax machine. As a result of this threat, GoAmerica sought an expedited hearing. At approximately 6:30 p.m. on June 26th, Retzlaff learned that the hearing on the motion would be at 10:30 the next morning. He immediately started to "put a boilerplate response together" because, as he told the trial court, "this isn't the first time somebody's tried one of these vexatious . . . litigant things on me before." If he did not receive a complete copy of the vexatious litigant motion before, he was given a copy in open court on June 27th. The court allowed GoAmerica to present its motion on June 27th, but the court did not require Retzlaff to come forward with his case. He mentioned that he would need witnesses, and the court invited him to subpoena anyone he wanted to appear. After the proceedings ended at 12:41 p.m. on June 27th, Retzlaff had until 2 p.m. on June 30th to prepare his arguments and obtain evidence. When the hearing reconvened on the 30th, Retzlaff

did not identify any witness he was unable to subpoena or any evidence he was unable to obtain. At the end of the hearing, the trial court gave the parties until July 29th to supply additional briefing, specifically advising Retzlaff, "[Y]ou're also entitled to brief me on any reason you don't feel you're a vexatious litigant."

Considering all of these circumstances, we see no abuse of discretion. Although Retzlaff's threat of additional litigation did not justify a summary determination that he was vexatious, it did justify an expedited hearing on the issue. The hearing began with short notice, but the trial court recessed the hearing early on the first day and continued the proceedings so that Retzlaff would have an opportunity to prepare his defense to the motion. The court even invited Retzlaff to submit additional briefing after the hearing. Finally, there is nothing in the record to suggest that the ultimate outcome of the hearing would have been any different if the hearing had been delayed by a few days.

Retzlaff's first issue is overruled.

In his third issue, Retzlaff argues that the trial court abused its discretion by declaring him a vexatious litigant. A court may find a plaintiff to be a vexatious litigant if the defendant shows that (1) there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant, and (2) "the plaintiff, in the seven-year period immediately preceding the date the defendant makes the [vexatious litigant] motion . . ., has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been . . . finally determined adversely to the plaintiff." TEX.CIV.PRAC.&REM.CODE ANN. § 11.054(1)(A). We review the trial court's determination that Retzlaff is a vexatious litigant for an abuse of discretion. *Sweed*, 319 S.W.3d at 793.

Regarding the first part of the vexatious litigant analysis, the trial court stated several grounds to support its finding that Retzlaff did not have a reasonable probability of prevailing in this suit. Retzlaff only attacks one of the stated grounds--that GoAmerica is immune from suit. An appellant must attack all independent grounds that support an adverse ruling. *Fox v. Wardy*, 224 S.W.3d 300, 304 (Tex.App.--El Paso 2005, pet. denied). Because Retzlaff has failed to attack all of the independent grounds supporting the trial court's determination that he did not have a reasonable probability of prevailing on his claims, we must uphold the trial court's ruling on this issue. *See id*.

Regarding the second part of the vexatious litigant analysis, the trial court listed twenty-six cases that Retzlaff commenced in propria persona within the preceding seven years. Some of these cases were dismissed or nonsuited with prejudice. The court specifically found that nine of the cases fit within the meaning of Section 11.054(1)(A). Retzlaff asserts that there is no proof that these suits were filed by him or that they were filed in propria persona. He also asserts that some of the cases were nonsuits that resulted from settlements. He argues that the trial court erred in concluding that cases that were dismissed or nonsuited with prejudice were "determined adversely" to him within the meaning of Section 11.054(1)(A). Retzlaff further argues that appeals should not be included.

GoAmerica submitted certified copies of docket sheets relating to five appellate proceedings. The trial court included these five cases in its list of cases that qualify under the statute. Because only five cases are required, we will confine our review to these cases and will examine the docket sheets to determine whether the trial court abused its discretion in concluding that these cases qualify under the statute.

-13-

Four of the docket sheets relate to appeals commenced in Texas appellate courts by Retzlaff, in propria persona, within the seven years immediately preceding the date that the vexatious litigant motion was filed. Retzlaff argues that appeals should not count because litigation is commenced in a trial court, not an appellate court. Retzlaff ignores the broad language used in the vexatious litigant statutes.

A litigant is vexatious if, in the applicable seven-year period, he "has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been . . . finally determined adversely to" him. TEX.CIV.PRAC.&REM.CODE ANN. § 11.054(1)(A). "Litigation" is "a civil action commenced, maintained, or pending in any state or federal court." *Id*. § 11.001(2). The language of these statutes plainly encompasses appeals. The statutes include "any state or federal court," excepting only small claims courts. Although "civil action" is not defined in the statutes, "action" is generally defined in law as a "civil or criminal judicial proceeding." BLACK'S LAW DICTIONARY 329 (9th ed. 2009). Thus, a person who files a notice of appeal is maintaining litigation. The primary meaning of "maintain" is "[t]o continue (something)." *Id*. at 1039. We also note that California's vexatious litigant statutes are virtually identical to ours. *See* CAL.CIV.PROC.CODE § 391(a), (b)(1). Those statutes have been held to apply to appeals, at least when the appellant was the plaintiff in the trial court. *See In re R.H.*, 88 Cal.Rptr.3rd 650, 661-63 (Cal.Ct.App. 2009); *McColm v. Westwood Park Ass'n*, 73 Cal.Rptr.2d 288, 292-93 (Cal.Ct.App. 1998). *But see Mahdavi v. Superior Court*, 82 Cal.Rptr.3rd 121, 126 (Cal.Ct.App. 2008)("A defendant who appeals an adverse ruling is not filing 'new' litigation or 'maintaining' litigation, but rather, is attempting to 'undo' the results of litigation that has been instituted against him or her.").

Retzlaff expresses concern that if appeals are included, one case could be counted more than once--first when it is filed in the trial court, again when an appeal is filed, and yet again when discretionary review is sought. We are counting only the appeals, not the underlying trial court cases. Because no double-counting is occurring here, we express no opinion regarding this concern.

Since appeals count and the docket sheets show that Retzlaff filed four appeals in propria persona within the applicable time frame, the only remaining issue is whether the appeals were "determined adversely" to Retzlaff.

Two of the docket sheets reflect that the trial court judgments were affirmed, meaning that Retzlaff, as the appellant, lost on the merits of his appeals. *See Retzlaff v. Tex. Dep't of Criminal Justice*, 135 S.W.3d 731 (Tex.App.--Houston [1st Dist.] 2003, no pet.); *Retzlaff v. Courteau*, No. 03-01-00647-CV, 2002 WL 31386042 (Tex.App.--Austin Oct. 24, 2002, pet. denied)(not designated for publication). The trial court did not abuse its discretion in determining that these appeals were determined adversely to Retzlaff.

The next two docket sheets are for appeals that were dismissed. *See Retzlaff v. Tex. Dep't of Criminal Justice*, 01-04-00409-CV, 2004 WL 2823168 (Tex.App.--Houston [1st Dist.] Dec. 9, 2004, no pet.)(mem. op.)(dismissing due to Retzlaff's failure to pay the filing fee); *Retzlaff v. Owusu*, No. 01-03-001301-CV, 2004 WL 1795146 (Tex.App.--Houston [1st Dist.] Aug. 12, 2004, no pet.)(mem. op.)(dismissing due to Retzlaff's failure to file a brief). A California appellate court has rejected the argument that dismissals should not be counted for purposes of a vexatious litigant statute because the argument runs contrary to the underlying intent of the legislation. *See Tokerud v. CapitolBank Sacramento*, 45 Cal.Rptr.2d 345, 347 (Cal.Ct.App.

1995). The court stated:

> An action which is ultimately dismissed by the plaintiff, with or without prejudice, is nevertheless a burden on the target of the litigation and the judicial system, albeit less of a burden than if the matter had proceeded to trial. A party who repeatedly files baseless actions only to dismiss them is no less vexatious than the party who follows the actions through to completion. The difference is one of degree, not kind.

*Id*. However, the court suggested that a dismissal should not count if it was part of a negotiated settlement. *See id*. Nothing on the docket sheets indicates that these dismissals were part of negotiated settlements. Although Retzlaff filed an affidavit in the trial court indicating that the *Owusu* case was voluntarily nonsuited after payment of an adequate settlement, the trial court could have rejected this averment based on the docket sheet, which shows an involuntary dismissal.

The final docket sheet is for an original proceeding commenced by Retzlaff in propria persona during the applicable time frame. After a response and a reply were filed, the appellate court denied mandamus relief to Retzlaff. Under the definitions given above, a person who seeks mandamus relief commences a civil action in the appellate court. Although the mandamus proceeding arose from the same underlying case as the appeal in *Owusu*, it was a separate, original proceeding that did not challenge the trial court's final decision in the underlying case or relate to the merits of the underlying case. *See In re Retzlaff*, 01-03-00770-CV, 2003 WL 22108920, at *1 (Tex.App.--Houston [1st Dist.] Sept. 4, 2003, orig. proceeding)(mem. op.)(denying mandamus relief for trial judge's purported failure to rule on motions). Therefore, we think it is proper to count it as Retzlaff's fifth adverse determination.

Retzlaff's third issue is overruled.

-16-

In his fourth issue, Retzlaff argues that the trial court erred in dismissing the case because he failed to post security. Although the order requiring him to post security was signed on October 15, 2008, he claims that he did not receive a copy of it until November 18, 2008. Since the order required him to post the security within seven days, Retzlaff contends that he did not receive the order in time to comply with it.

Under the doctrine of invited error, a party may not "ask something of the trial court and then complain that the court erred in granting the relief sought." *Berry v. Segall*, 315 S.W.3d 141, 143-44 (Tex.App.--El Paso 2010, no pet.). On November 24, 2008, Retzlaff filed a motion in which he noted that he had not posted the security required by the October 15th order and "ask[ed] the court to sign an order dismissing this case pursuant to Texas Civil Practice & Remedies Code section 11.056." The referenced statute requires a trial court to dismiss if the plaintiff fails to post security after being ordered to do so. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 11.056. Thus, Retzlaff asked the court for the very thing that he complains about now--a dismissal for failure to post security.

Moreover, "[a]s a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a *timely* request, objection, or motion . . . ." TEX.R.APP.P. 33.1(a)(1)[Emphasis added]. Although Retzlaff objected to the lack of notice in his motion for new trial, he did not mention it any time between November 18, 2008 (which is when he claims to have received the order) and December 12, 2008 (which is when the case was dismissed). Therefore, he failed to make a timely objection. *See Low v. Henry*, 221 S.W.3d 609, 618 (Tex. 2007); *Landerman v. State Bar of Texas*, 247 S.W.3d 426, 433 (Tex.App.--Dallas 2008, pet. denied).

Retzlaff's fourth issue is overruled.

In his seventh issue, Retzlaff argues that the trial court erred in dismissing the case with prejudice as to all of the defendants. Within this issue, he first argues that the vexatious litigant statutes do not authorize a dismissal with prejudice. Actually, the applicable statute does not specify whether dismissals should be with or without prejudice. It simply states, "The court shall dismiss a litigation as to a moving defendant if a plaintiff ordered to furnish security does not furnish the security within the time set by the order." TEX.CIV.PRAC.&REM.CODE ANN. § 11.056. Texas appellate courts have affirmed dismissals with prejudice pursuant to this statute. *See, e.g., Drum v. Calhoun*, 299 S.W.3d 360, 374 (Tex.App.--Dallas 2009, pet. denied), *cert. denied*, 131 S.Ct. 1017, 178 L.Ed.2d 843 (2011); *Nell Nations Forist v. Vanguard Underwriters Ins. Co.*, 141 S.W.3d 668, 670-71 (Tex.App.--San Antonio 2004, no pet.). However, the opinions in these cases do not indicate that the appellants argued that the dismissals should have been without prejudice.

Retzlaff offers no reasoning as to why the dismissal should have been without prejudice. *See* TEX.R.APP.P. 38.1(i). Accordingly, without deciding whether it may *ever* be error to dismiss a case under the statute with prejudice, we see no error in this case.

Retzlaff further argues that the trial court erred in dismissing the suit as against Dubrinski (Dobrinksy) and John and/or Jane Doe. As noted above, the statute required the court to dismiss "as to a moving defendant." TEX.CIV.PRAC.&REM.CODE ANN. § 11.056. "'Moving defendant' means a defendant who moves for an order under Section 11.051 determining that a plaintiff is a vexatious litigant and requesting security." *Id*. § 11.001(4). GoAmerica is the only defendant that entered a general appearance in this case, and it is the only defendant that made a motion

under Section 11.051. When Retzlaff failed to post security, it filed a motion to dismiss the case with prejudice. Within the body of this motion, GoAmerica sought dismissal "as to all Defendants," but it provided no argument to demonstrate that it had standing to obtain a dismissal for the other defendants. The statutes are very clear. Because the other defendants did not make a motion under Section 11.051, they are not entitled to a dismissal with prejudice.

Retzlaff's seventh issue is overruled to the extent that it attacks the dismissal with prejudice as to GoAmerica, but sustained as to the other defendants.

In his sixth issue, Retzlaff challenges the constitutionality of the vexatious litigant statutes on a number of grounds. He asserts that his challenges arise under the Texas Constitution, as well as the United States Constitution. When a provision of the Texas Constitution has an analogue in the United States Constitution, we generally construe the provisions the same in the absence of a showing as to why the Texas provision should be construed more broadly. *See Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 98 (Tex. 2004). With one exception, Retzlaff does not suggest that the Texas provisions are broader than their federal analogues. Retzlaff also raises one ground that is unique to the Texas Constitution. Therefore, with these exceptions, we assume that the federal and state constitutions provide the same protections.

When we are confronted with a challenge to the constitutionality of a statute, we presume that the statute is valid and that the legislature did not act unreasonably or arbitrarily. *In re D.J.R.*, 319 S.W.3d 759, 764-65 (Tex.App.--El Paso 2010, pet. denied). The person challenging the legislation bears the burden to establish its unconstitutionality. *Id*. at 765. In a facial challenge to a statute, the challenger must establish that no set of circumstances exists under

which the statute will be valid. *Id*. at 764. Since a statute may be valid as applied to one set of facts and invalid as applied to another, the challenger must first show that the statute is unconstitutional as applied to him; that the statute may be unconstitutional as applied to others is insufficient to support a facial challenge. *Id*. A claim that a statute is unconstitutional as applied is a claim that the statute, although generally constitutional, operates unconstitutionally as to the challenger. *Id*. at 765. An as-applied challenger must only demonstrate that the statute operates unconstitutionally when applied to his particular circumstances. *Id*.

One final consideration guides us through Retzlaff's challenges to the vexatious litigant statutes: There is no constitutional right to file frivolous litigation. *Wolfe v. George*, 486 F.3d 1120, 1125 (9th Cir. 2007).

Retzlaff argues that Section 11.054 is void for vagueness because it provides no guidance as to the meaning of "reasonable probability that the plaintiff will prevail" or as to who has the burden on this issue. There is no requirement that a statute define all words or terms used. *Rooms With a View, Inc. v. Private Nat'l Mortg. Ass'n Inc.*, 7 S.W.3d 840, 845 (Tex.App.--Austin 1999, pet. denied). "Courts recognize the myriad of factual situations that may arise and allow statutes to be worded with flexibility," as long as they provide fair notice. *Id*. "In the case of civil or regulatory statutes, no more than a reasonable degree of certainty is required." *Id*.

The statute provides that a court may find a plaintiff to be a vexatious litigant "if the defendant shows that there is not a reasonable probability that the plaintiff will prevail." TEX.CIV.PRAC.&REM.CODE ANN. § 11.054. This language clearly places the burden on the defendant. Furthermore, the term "reasonable probability" is certain enough to provide fair notice. *See Wolfe*, 486 F.3d at 1124 (rejecting general vagueness challenge to the California

vexatious litigant statute, which also uses the "reasonable probability" standard); *Taliaferro v. Hoogs*, 46 Cal.Rptr. 147, 152 (Cal.Ct.App. 1965)(rejecting argument that "reasonable probability" standard was fatally uncertain); *see also Leonard v. Abbott*, 171 S.W.3d 451, 456-57 (Tex.App.--Austin 2005, pet. denied)(rejecting argument that "reasonable probability" was void for vagueness as applied to the appellant).  Retzlaff has not demonstrated that the term operated unconstitutionally as applied to his claims.

Retzlaff next challenges the security requirement as a denial of "access to the courts," due process, and equal protection because the statutes provide no guidance as to the amount of security and make no allowance for indigent plaintiffs.  Retzlaff is simply wrong in asserting that no guidance as to the amount is provided.  The legislation states that the security is to assure payment of the moving defendant's reasonable expenses, including attorney's fees.  TEX.CIV. PRAC.&REM.CODE ANN. § 11.055(c).[5]

On the facts before us, we agree with those courts that have upheld a similar security requirement under rational basis review.  *See Wolfe*, 486 F.3d at 1126; *Moran v. Murtaugh Miller Meyer & Nelson, LLP*, 152 P.3d 416, 419 (Cal. 2007).  In this case, the security requirement did not prevent the vindication of a fundamental right, such as a right related to marriage.  *See Wolfe*, 486 F.3d at 1125-26.  Moreover, although Retzlaff points out that he filed an uncontested affidavit of indigency at the outset of the case, he ignores the fact that there was a contest to the affidavit of indigency that he filed at the end of the case in order to obtain a free appellate record.

_____

[5] Retzlaff also argues that there is no evidence that the $12,500 in security ordered by the trial court is a necessary or fair amount.  To the contrary, GoAmerica presented evidence that it had incurred $12,500 in reasonable attorney's fees just in responding to Retzlaff's motion for sanctions.  Therefore, to the extent Retzlaff is attempting to mount a no-evidence challenge, that challenge fails.

The court sustained this contest, finding Retzlaff's testimony not credible. Accordingly, the security requirement does not violate due process or equal protection as applied to Retzlaff.

Retzlaff does not explain what he means by the term "access to the courts." However, the term is typically used to describe the right of prisoners to attack their sentences or the conditions of their confinement. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 346, 116 S.Ct. 2174, 2177, 135 L.Ed.2d 606 (1996). Retzlaff cites one of the seminal Supreme Court case recognizing this right. *See Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). Because Retzlaff is not an inmate and is not attempting to attack a prison sentence or conditions of confinement, he cannot establish that the security requirement violates his right of access to the courts. *See Lewis*, 518 U.S. at 350-51, 97 S.Ct. at 2179-80.

Retzlaff further argues that the vexatious litigant statutes violate the right of access to the courts, due process, and equal protection because they bar all lawsuits, not just frivolous ones. We disagree with this interpretation of the legislation. An administrative judge may grant permission for a vexatious litigant to file litigation if the litigation has merit and is not being brought for harassment. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 11.102(a). And, contrary to Retzlaff's understanding, a vexatious litigant may seek review of the administrative judge's decision. *See In re Johnson*, No. 07-09-0035-CV, 2009 WL 2632800, at *1-2 (Tex.App.--Amarillo Aug. 27, 2009, orig. proceeding)(mem. op.)(providing mandamus review of administrative judge's denial of permission); *see also* TEX.CIV.PRAC.&REM.CODE ANN. § 11.102(c)(effective Jan. 1, 2012)(expressly authorizing mandamus review of administrative judge's denial). Thus, while the legislation places an additional hurdle before vexatious litigants, it does not prevent them from pursuing meritorious litigation.

Retzlaff next argues that his right to self-representation is violated by the prohibition on filing future lawsuits in propria persona. We disagree because this restriction is rationally related to the legislature's goal of curbing frivolous litigation. *See Wolfe*, 486 F.3d at 1126 ("Frequent pro se litigants are not a suspect class meriting strict scrutiny."). As another court has stated, "Attorneys are governed by prescribed rules of ethics and professional conduct, and, as officers of the court, are subject to disbarment, suspension, and other disciplinary sanctions not applicable to litigants in propria persona." *Taliaferro*, 46 Cal.Rptr. at 151; *see also Leonard*, 171 S.W.3d at 458 (rejecting argument that banning future in propria persona suits violates equal protection).

Retzlaff contends that the legislation denies his right to freedom of expression pursuant to the First Amendment to the United States Constitution and Article I, section 8, of the Texas Constitution. In particular, he argues that the requirement of obtaining permission to file future law suits is an invalid prior restraint. *See Davenport v. Garcia*, 834 S.W.2d 4, 10 (Tex. 1992)(holding that a prior restraint is presumptively unconstitutional under the Texas Constitution).

"Just as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition." *Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 743, 103 S.Ct. 2161, 2170, 76 L.Ed.2d 277 (1983)[Internal citations omitted]. Therefore, "contentions that one's freedom of speech is violated are to no avail against injunctions to prevent vexatious litigation." *Owens-Corning Fiberglas Corp. v. Baker*, 838 S.W.2d 838, 842-43 (Tex.App.--Texarkana 1992, no writ). Because Retzlaff has no right to file frivolous suits, he has not demonstrated that requiring him to

obtain permission infringes any constitutionally protected form of expression. *See Bill Johnson's Rests.*, 461 U.S. at 744, 103 S.Ct at 2170 (upholding NLRB's power to enjoin baseless lawsuits); *Wolfgram v. Wells Fargo Bank*, 61 Cal.Rptr.2d 694, 705 (Cal.Ct.App. 1997)(rejecting challenge to comparable California statute as a prior restraint).

Last, Retzlaff argues that the legislation's ban on lawsuits constitutes outlawry, which is prohibited by the Texas Constitution. *See* TEX.CONST. art. I, § 20. This prohibition forbids the government from denying a citizen all legal rights or transporting a citizen out of the state as punishment for an offense. *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 499 (Tex. 1995). Because Retzlaff has not been denied all legal rights or banished from the state, the "outlawry" provision is not implicated. *See id*. Accordingly, the "outlawry" provision of the Texas Constitution is not implicated.

Retzlaff's sixth issue is overruled.

In conclusion, the trial court's order of June 26, 2008, which contained various injunctive provisions, is vacated *in toto*. The court's judgment dismissing this case with prejudice is reversed in part, as it pertains to any defendants other than GoAmerica. In all other respects, the judgment is affirmed. The cause is remanded for further proceedings consistent with this opinion. Nothing stated herein should be construed to cast doubt on the trial court's conclusion that Retzlaff is a vexatious litigant or on the court's prohibition against Retzlaff's filing any new litigation in this state. The cause is remanded solely for the purpose of disposing of the remaining defendants.

October 7, 2011

DAVID WELLINGTON CHEW, Chief Justice

-24-

Before Chew, C.J., McClure, and Rivera, JJ.