

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| DESIREE NICHOLE GRANT, | § | No. 08-23-00336-CV |
| Appellant, | § | Appeal from |
| v. | § | 205th Judicial District Court |
| GILBERTO A. HANDAL, M.D., | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2023DCV1622) |

## MEMORANDUM OPINION

In this defamation case, Desiree Nichole Grant appeals the trial court's orders denying her motion for summary judgment and granting Dr. Gilberto Handal's motion to dismiss her suit under § 74.351 of the Texas Medical Liability Act (TMLA). Finding no error, we affirm.

## BACKGROUND[1]

In June 2022, Ms. Grant took her son to see Dr. Handal at Texas Tech Physicians of El Paso for an HIV test after becoming concerned about circumstances at his daycare. Dr. Handal ordered the test and later reported the negative result to Ms. Grant and her husband over the phone.

---

[1] Because the trial court dismissed this case in its early stages, the record is limited. The background facts are derived from Ms. Grant's pleadings.

On April 19, 2023, while reviewing her son's medical records online, Ms. Grant discovered an erroneous note stating that she had tested positive for HIV. She called Dr. Handal's office immediately with her concerns and sent a letter via fax and certified mail requesting that the note be removed. Dr. Handal apologized, explaining that he made the note in error and would remove it. However, after several weeks passed and the note still had not been removed or corrected, Ms. Grant again contacted Dr. Handal's office. When that attempt was unsuccessful, she sent a letter demanding compensation and immediate removal of the note.

On May 22, 2023, Ms. Grant sued Dr. Handal for defamation per se, requesting $150,000 in compensatory damages as well as punitive damages. Ms. Grant's petition alleges that the false statements were "published . . . to various health care systems and staff members" and "republished locally [and] nationally to many other third parties." As a result, Ms. Grant says she "is self-conscious in places and at times she was not before." She further fears others treat her, her husband, and her son differently "because of the damage done to her reputation and her character."

After Ms. Grant moved to compel discovery, she filed a motion to appear via videoconference, requesting that she be permitted to appear remotely for all future court settings taking place on or after August 31, 2023, because she and her family would be moving out of state. Though the parties attended an in-person discovery conference before Ms. Grant's move, the trial court did not rule on Ms. Grant's motion to appear via videoconference. Ms. Grant then moved for summary judgment. Dr. Handal responded, and Ms. Grant noticed a hearing on the motion for November 1. She also filed a motion to appear for that hearing remotely.

Meanwhile, Dr. Handal moved to dismiss the suit under § 74.351 of the TMLA, arguing that Ms. Grant's suit constitutes a health care liability claim under the TMLA, and because she did not timely serve Dr. Handal with the requisite expert report, her claims must be dismissed with

prejudice. Ms. Grant opposed the motion, and Dr. Handal noticed a hearing on the motion for the same day as Ms. Grant's motion for summary judgment.

On November 1—the day the hearing for both motions was to occur—the trial court granted Dr. Handal's motion to dismiss and denied Ms. Grant's motion for summary judgment on written submission without an oral hearing. Ms. Grant now appeals.

## DISCUSSION

Ms. Grant brings five issues on appeal.[2] In her first and second issues, she argues the trial court violated her due process rights by failing to rule on her motion to appear remotely for a hearing on the two dispositive motions and by refusing to allow her to appear remotely. In her third and fifth issues, she contends the trial court erred by denying her motion for summary judgment. In her fourth issue, she challenges the trial court's determination that her suit is a health care liability claim and dismissing the case under the TMLA.

### A. The trial court did not err by denying Ms. Grant's motions to appear remotely or deciding the dispositive motions without an oral hearing.

In her first two issues, Ms. Grant contends the trial court violated her Fourteenth Amendment due process rights by not ruling on her motions to appear by videoconference and not holding a remote hearing on the dispositive motions. Ms. Grant argues that Texas Rule of Civil Procedure 21d allows parties to appear remotely, and she established a good reason—travel restrictions—that supported her need to appear remotely.

"It is [a]n elementary and fundamental requirement of due process that notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Retzlaff v. GoAmerica*

---

[2] Ms. Grant proceeds pro se, as she did at the trial-court level.

*Commc'ns Corp.*, 356 S.W.3d 689, 695 (Tex. App.—El Paso 2011, no pet.) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). That is, due process requires that parties receive notice of a hearing that "afford[s] a reasonable time for those interested to make their appearance." *Id.* (quoting *Mullane*, 339 U.S. at 314). But while notice of a hearing is required, due process does not require a trial court to hold a hearing before deciding all motions—including the two dispositive motions at issue here. *See Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998) (noting that oral hearing on motion for summary judgment "is not mandatory"); *McKinney v. Lee Bivins Found.*, No. 07-20-00273-CV, 2021 WL 2639922, at *2 (Tex. App.—Amarillo June 25, 2021, pet. denied) (mem. op.) (concluding TMLA does not require trial court to hold a hearing on a motion to dismiss).

First, though Ms. Grant contends the trial court failed to rule on her motions to appear remotely, its order granting Dr. Handal's motion to dismiss stated that "the Court denies all relief not expressly granted in this judgment." In other words, the trial court implicitly denied all pending motions, including Ms. Grant's motions to appear remotely, when dismissing the suit. While Rule 21d provides that "a court *may* allow or require a participant to appear at a court proceeding by videoconference, teleconference, or other available electronic means," it in no way requires a court to do so. Tex. R. Civ. P. 21d(b)(1) (emphasis added).

Second, the trial court was not required to hold an oral hearing on either dispositive motion. Ms. Grant had sufficient notice of the scheduled hearing on both motions to meet what due process (and the Texas Rules of Civil Procedure) requires.[3] *See Retzlaff*, 356 S.W.3d at 695; Tex. R. Civ. P. 166a(c). But the trial court acted within its discretion by deciding the motions on written

---

[3] Ms. Grant does not contend that she had insufficient notice. Dr. Handal noticed the November 1 hearing on his motion to dismiss on October 12 and filed his response to Ms. Grant's motion for summary judgment on October 24, or more than seven days before the hearing. Tex. R. Civ. P. 166a(c).

submission rather than proceeding with a hearing. *See Martin*, 989 S.W.2d at 359; *McKinney*, 2021 WL 2639922, at *2.

Issues one and two are overruled.

**B. The trial court did not err by dismissing the case under § 74.351 of the TMLA.**

In her fourth issue, Ms. Grant argues the trial court erred by granting Dr. Handal's motion to dismiss because her suit is not a health care liability claim under the TMLA. Specifically, she contends the TMLA does not "shield physicians from liability for defamation or similar intentional misconduct." And she maintains that Dr. Handal's conduct "is so grossly apparent that a layman would have no difficulty in recognizing the defamation per se," such that her claims do not require an expert report.

Health care liability claims under the TMLA are subject to various statutory rules, including the requirement that a plaintiff serve the defendant with an expert report within 120 days of the defendant's original answer. *Id.* § 74.351(a). If the plaintiff fails to do so, the trial court must dismiss the claims against the physician or health care provider with prejudice on the defendant's motion. *Id.* § 74.351(b).

Whether a claim is a health care liability claim under the TMLA is a question of law that we review de novo. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex. 2015). In answering that question, "we examine the underlying nature and gravamen of the claims, rather than the way it is pleaded." *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 534 (Tex. 2016). That is, we "focus on the set of operative facts underlying the claim that are relevant to the alleged injury, not on how the plaintiff's pleadings describ[e] the facts or legal theories asserted." *Collin Creek Assisted Living Ctr., Inc. v. Faber*, 671 S.W.3d 879, 885 (Tex. 2023) (quoting *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012)). "When a claim brought against a health care provider is based on facts implicating the defendant's conduct during the course of a

5

patient's care, treatment, or confinement, a rebuttable presumption arises that it is a health care liability claim for purposes of the [TMLA]." *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 363 (Tex. 2019) (quoting *Loaisiga*, 379 S.W.3d at 256).

A health care liability claim has three essential elements: (1) the defendant is a physician or health care provider; (2) the claim is for treatment, lack of treatment, or another departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission proximately caused the claimant's injury or death. *Faber*, 671 S.W.3d at 886 (citing Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13)). We understand Ms. Grant's argument to focus on the second element.

The TMLA defines "professional or administrative services" as "those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs." Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(24). The Texas Supreme Court has determined that the maintenance of accurate medical records, including "accurately recording diagnoses, among other things," falls within this definition. *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 364–65 (Tex. 2019).

To be considered a health care liability claim under the TMLA, the departure from accepted standards of professional or administrative services—here, maintaining accurate medical records—must also be "directly related to health care." The TMLA defines "health care" as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(10). And "directly related" means

"an uninterrupted, close relationship or link between the things being considered." *Carswell*, 505 S.W.3d at 536.

*Weems* considered a similar question as presented here. In that case, the plaintiff was indicted for aggravated assault with a deadly weapon. *Weems*, 575 S.W.3d at 361. But he maintained that he was indicted only because of a note in the victim's medical records, which described the victim's injury as a "gunshot wound." *Id.* The plaintiff disputed that he shot the victim, so he sued the hospital for intentional infliction of emotional distress based on the allegedly false medical record. *Id.* After determining that the accurate maintenance of medical records is a "professional or administrative service" under the TMLA, the Court concluded that the duty to maintain accurate medical records is also directly linked to health care. *Id.* at 364–65. In considering the necessity of expert testimony, the Court opined:

> Even if expert testimony were not ultimately required to prove his claims, the gist of Weems's complaint is that [the victim's] medical record was, in fact, inaccurate, which is contrary to accepted standards of care. This is a health care liability claim even though Weems does not specifically allege a departure from the standard of care.

*Id.* at 366.

Here, Ms. Grant's pleadings assert a claim against her son's health care provider based on a note made in her son's medical records during his treatment. That triggers the rebuttable presumption that her suit is a health care liability claim for purposes of the TMLA. *See id.* at 363. Ms. Grant therefore bears the burden of rebutting that presumption, but she has not done so. Like the *Weems*'s claim, the gist of Ms. Grant's complaint is that her son's medical record is inaccurate, which is contrary to accepted standards of care. *Id.* at 366. And though she alleges that the TMLA does not apply to defamation or other similar intentional misconduct, "the statutory definition of a health care liability claim does not distinguish between departures that are intentional or merely negligent." *Weems*, 575 S.W.3d at 366.

Considering the nature of Ms. Grant's claims, she asserted a health care liability claim under the TMLA and was required to file an expert report within 120 days of Dr. Handal's original answer. Because she did not do so, the trial court correctly dismissed her claims with prejudice under § 74.351(b).

Issue four is overruled. Because dismissal was required under § 74.351(b), the trial court also did not err in denying Ms. Grant's motion for summary judgment. Issues three and five are likewise overruled.

## CONCLUSION

For the above reasons, we affirm the trial court's order dismissing Ms. Grant's suit with prejudice under § 74.351 of the TMLA.

LISA J. SOTO, Justice

April 22, 2024

Before Alley, C.J., Palafox and Soto, JJ.

8