ACCEPTED
01-14-00972-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/13/2015 4:18:34 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-14-00972-CR

# IN THE COURT OF APPEALS
# FOR THE FIRST SUPREME JUDICIAL DISTRICT
# HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/13/2015 4:18:34 PM
CHRISTOPHER A. PRINE
Clerk

## FLORENCIO LEAL
## APPELLANT

## VS.

## THE STATE OF TEXAS
## APPELLEE

### TRIAL COURT CAUSE NO. 1271369
### IN THE 209TH DISTRICT COURT
### OF HARRIS COUNTY, TEXAS

## BRIEF FOR APPELLANT

Nicole DeBorde
Texas Bar No. 00787344
BIRES, SCHAFFER & DEBORDE
JPMorgan Chase Bank Building
712 Main Street, Suite 2400
Houston, Texas 77002
(713) 228-8500
(713) 228-0034 fax
Nicole@BSDLawFirm.com
Attorney for Appellant

**ORAL ARGUMENT REQUESTED**

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Tex. R. App. P. 39.7, Appellant requests oral argument in this cause because oral argument would significantly assist this Court in the decision making process.

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.1(a), a complete list of the names and all interested parties is provided below:

| | |
|---|---|
| Appellant: | Florencio Leal<br>Polunsky Unit<br>TDCJ No. 01967712<br>3872 FM 350 South<br>Livingston, Texas 77351 |
| Presiding Judge: | Hon. Mike Wilkerson<br>Visiting Judge<br>209th District Court<br>1201 Franklin, 18th Floor<br>Houston, Texas 77002 |
| Trial Prosecutor: | Nathan Moss<br>Aimee Bolletino<br>Assistant District Attorney<br>Harris County District Attorney's Office<br>1201 Franklin, Suite 400<br>Houston, Texas 77002 |
| Defense Counsel: | Joseph Salhab<br>Attorney at Law<br>2028 Buffalo Terrace<br>Houston, Texas 77019 |

State's Appellate Counsel:       Hon. Devon Anderson
Harris County District Attorney
1201 Franklin, Suite 400
Houston, Texas 77002

Appellant's Counsel:          Nicole DeBorde
Bires Schaffer & DeBorde
Attorney at Law
JPMorgan Chase Bank Building
712 Main Street, Suite 2400
Houston, Texas 77002

# TABLE OF CONTENTS

**PAGE**

STATEMENT REGARDING ORAL ARGUMENT............................................2

IDENTITY OF PARTIES AND COUNSEL.......................................................2

TABLE OF CONTENTS......................................................................................4

INDEX OF AUTHORITIES.................................................................................6

PRELIMINARY STATEMENT...........................................................................10

STATEMENT OF FACTS...................................................................................11

POINT OF ERROR ONE.....................................................................................18

**THE TRIAL COURT ERRED BY CHARGING THE JURY ON THE LAW OF PARTIES**

POINT OF ERROR TWO.....................................................................................18

**SECTION 702(b) OF THE TEXAS PENAL CODE IS UNCONSTITUTIONAL AS APPLIED TO APPELLANT AND FACIALLY UNCONSTITUTIONAL**

POINT OF ERROR THREE..................................................................................26

**THE TRIAL COURT ERRED BY ADMITTING EXTRANEOUS OFFENSE EVIDENCE OVER APPELLANT'S OBJECTION**

POINT OF ERROR FOUR....................................................................................35

**THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT APPELLANT'S CAPITAL MURDER CONVICTION**

PRAYER FOR RELIEF........................................................................................40

CERTIFICATE OF SERVICE..............................................................................42

CERTIFICATE OF COMPLIANCE...................................................................43

# INDEX OF AUTHORITIES

**CASES**                                                                                      **PAGE**

*Abdnor v. State*, 871 S.W.2d 726 (Tex. Crim. App. 1994)....................................23

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984)..................................24

*Blackman v. State*, 350 S.W.3d 588 (Tex. Crim. App. 2011)................................36

*Bordman v. State,* 56 S.W.3d 63 (Tex. App.—Houston [14th Dist.] 2001, pet.ref'd)......................................................................................................................39

*Brooks v. State,* 323 S.W.3d 893 (Tex. Crim. App. 2010)....................................35

*Caballero v. State*, 919 S.W.2d 919, 922 (Tex. App. [14th Dist.] 1996, pet. ref'd)...................................................................................................................31

*Combs v. STP Nuclear Operating Co.*, 239 S.W.3d 264 (Tex. App.—Austin 2007, pet. denied).............................................................................................................20

*Curtis v. State*, 89 S.W.3d 163 (Tex. App.—Fort Worth 2002, pet. ref'd).............32

*Delgado v. State*, 235 S.W.3d 244 (Tex. Crim. App. 2007)..................................18

*Emund v. Florida*, 458 U.S. 782 (1982).........................................................22, 23

*Fuller v. State,* 827 S.W.2d 919 (Tex. Crim. App. 1992)................................23, 38

*Gardner v. State,* 306 S.W.3d 274 (Tex. Crim. App. 2009)..................................38

*Gillenwaters v. State*, 205 S.W.3d 534 (Tex. Crim. App. 2006)......................19, 22

*Gross v. State,* 380 S.W.3d 181 (Tex. Crim. App. 2012)................................22, 37

*Higginbotham v. State*, 356 S.W.3d 584 (Tex. App.—Texarkana 2011, pet. ref'd)...................................................................................................................34

*In re N.C.M.*, 271 S.W.3d 327 (Tex. App.—San Antonio 2008, no pet.)...............20

*Jackson v. Virginia*, 443 U.S. 307 (1979)...........................................................35

*Johnson v. State*, 967 S.W.2d 410 (Tex. Crim. App. 1998)...................................33

*King v. State*, 953 S.W.2d 266 (Tex. Crim. App. 1997)........................................34

*Kirsch v. State*, 357 S.W.3d 645 (Tex. Crim. App. 2012)......................................19

*Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009)......................................35

*Love v. State,* 199 S.W.3d 447 (Tex. App.—Houston [1st Dist.]
2006, pet. ref'd)............................................................................................23, 38

*Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)......................................36

*Mann v. State*, 964 S.W.2d 639 (Tex. Crim. App. 1998)..................................18, 24

*Miller v. State,* 667 S.W.2d 773 (Tex. Crim. App. 1984)......................................38

*Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1990).......................31, 32

*Moreno v. State*, 858 S.W.2d 453 (Tex. Crim. App. 1993)...................................26

*Nobles v. State*, 843 S.W.2d 503 (Tex. Crim. App. 1992)....................................27

*Orellana v. State,* 381 S.W.3d 645 (Tex. App.–San Antonio 2012, pet. ref'd).......38

*Pondexter v. State*, 942 S.W.2d 577 (Tex. Crim. App. 1996)...............................28

*Poole v. State*, 974 S.W.2d 892 (Tex. App.—Austin 1998, pet. ref'd)............30, 31

*Reeves v. State*, 420 S.W.3d 812 (Tex. Crim. App. 2013).....................................24

*Retzlaff v. GoAmerica Communications Corp.*, 356 S.W.3d 689 (Tex. App. —El
Paso 2011, no pet.).............................................................................................22

*Roberson v. State,* 16 S.W.3d 156 (Tex. App.–Austin 2006, pet. ref'd).................38

*Rogers v. State*, 853 S.W.2d 29 (Tex. Crim. App. 1993)............................27, 28, 29

*Ruiz v. State,* 579 S. W.2d 206 (Tex. Crim. App. [Panel Op.] 1979)......................38

*Sakil v. State*, 287 S.W.3d 23 (Tex. Crim. App. 2009)............................................18

*Salazar v. State*, 38 S.W.3d 141 (Tex. Crim. App. 2001)......................................26

*Sanders v. State*, 255 S.W.3d 754 (Tex. App.—Fort Worth 2008, pet. ref'd).....27

*Scott v. State,* 322 S.W.3d 662 (Tex. Crim. App. 2010)...................................19, 22

*State ex rel. Lykos v. Fine*, 330 S.W.3d 904 (Tex. Crim. App. 2011)....................22

*Temple v. State*, 390 S.W.3d 341 (Tex. Crim. App. 2013).................................35

*Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504 (Tex. 1995)................20

*Texas Mun. League Intergovernmental Risk Pool v. Texas Workers' Comp. Com'n.*, 74 S.W.3d 377 (Tex. 2002)..................................................................20, 21

*Texas Pub. Bldg. Auth. v. Mattox*, 686 S.W.2d 924 (Tex.1985)............................20

*Tibbs v. Florida*, 457 U.S. 31 (1982)................................................................36, 40

*Vasquez v. State*, 389 S.W.3d 361 (Tex. Crim. App. 2012)...................................18

*Vogt v. State*, 421 S.W.3d 233 (Tex. App.—San Antonio 2013, pet. ref'd)...........18

*Warner v. State*, 245 S.W.3d 458 (Tex. Crim. App. 2008)...................................24

*Wiggins v. State,* 255 S.W.3d 766 (Tex. App.—Texarkana 2008, no pet.)............38

*Wooten v. State*, 400 S.W.3d 601 (Tex. Crim. App. 2013)...................................24

*Wyatt v. State*, 23 S.W.3d 18 (Tex. Crim. App. 2000)....................................27, 30

*Yates v. State*, 941 S.W.2d 357 (Tex. App.—Waco 1997, pet. ref'd)....................31

**CONSTITUTIONS, STATUTES, AND OTHER AUTHORITIES**     **PAGE**

TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007)...............................................18

TEX. CODE CRIM. PROC. ANN. art. 36.19 (West  2013)..............................................24

TEX. PENAL CODE ANN. § 7.01 (West 2011)....................................................22, 37

TEX. PENAL CODE ANN. § 7.02 (West 2011)...........................19, 20, 21, 22, 23, 37

TEX. PENAL CODE ANN. § 19.02 (West 2011)....................................................36, 37

TEX. PENAL CODE ANN. § 19.03 (West 2011)....................................................21, 37

TEX. PENAL CODE ANN. § 29.02 (West 2011)........................................................37

TEX. PENAL CODE ANN. § 31.03 (West 2011)........................................................37

TEX. R. APP. P. 38.1 (West 2011)...........................................................................2

TEX. R. APP. P. 39.7 (West 2011).............................................................................2

TEX. R. APP. P. 44.2 (West 2011).........................................................................33

TEX. R. EVID. 403 (West 2013)......................................................................31, 32

TEX. R. EVID. 404 (West 2013)...............................................................27, 28, 30

## PRELIMINARY STATEMENT

On July 21, 2010, Appellant was charged by indictment in Cause No. 1271369 with capital murder alleged to have occurred on or about April 8, 2010. (C.R. 8).[1] On November 18, 2014, Appellant was brought to trial before a jury and entered a plea of not guilty. (3 R.R. 26). On November 19, 2014, Appellant was found guilty of capital murder. (C.R. 169-70). The trial court assessed punishment at confinement for life in the Texas Department of Criminal Justice – Correctional Institutions Division pursuant to § 12.31 of the Texas Penal Code. (6 R.R. 87).

On November 19, 2014, Appellant gave timely notice of appeal and the Trial Court's Certification of Defendant's Right of Appeal ensures Appellant has the right to appeal. (C.R. 172; 174).

---

[1] Mr. Leal will be referred to as "Appellant". The Clerk's Record will be referred to as "(C.R.)" and the Reporter's Record will be referred to as "(R.R.)". The audio recording of Mr. Leal's statement will be referred to as "(SX 147)"

## STATEMENT OF FACTS

On April 8, 2010, Andres Gonzalez ("complainant") was shot and killed by Javier Cortez ("Cortez") and two other unidentified men. (3 RR 49). Earlier that evening, Appellant was at his mom's house when Cortez called him explaining they needed to get together to take care of some business. (SX 147). Appellant and Cortez met up, and Cortez instructed Appellant to take a turquois Pontiac Grand Am back to his mom's house and wait for him. (SX 147). Appellant complied and about 30 minutes later Cortez and another man, identified only as Javier's cousin, picked Appellant up in a tan, four-door, little car. (SX 147). The purpose of the meeting, as told by Javier, was to go to some house and shoot it up while Appellant looks for money and drugs. (SX 147).

### The Lucore scene

The three men pulled up to a house located at 10118 Lucore in a blue or black, older model Honda Civic, and a Ford Taurus. (3 R.R. 46-47; 54). When Javier and the two unidentified men approached the house the complainant was shot upon opening the door; Javier continued shooting while Appellant and the other man went in and began searching through cabinets. (SX 147).

Tracy Woodman ("Woodman"), the only eyewitness to the complainant's murder, was living across the street and saw an unidentified man coming out of the house around 8:30 that evening shooting a gun. (3 R.R. 42). An initial burst of three

11

to five gunshots caused Woodman to jump out of bed while watching TV and investigate with her 20-year-old daughter. (3 R.R. 41, 44). Woodman and her daughter focused on the complainant's house and the two noticed the front door opened with the lights on. (3 R.R. 50). A short Hispanic man was on the inside of the house with his back toward the door, while a tall Hispanic man was outside of the house. (3 R.R. 50). A second burst of gunfire erupted as two men ran from the house, towards the street, and into the awaiting cars and sped off. (3 R.R. 54).

### Several Hours Later

Appellant and Javier went to a house on Redbluff to drop off the turquois Grand Am and pick up Javier's truck after speeding away from the Lucore scene. (SX 147). Javier's cousin broke away from the group at this time, leaving Javier and Appellant at the Ritz gentlemen's club where they spent several hours sitting and drinking. (SX 147).

### The Dade Scene

Once Javier and Appellant left the Ritz, Javier surprised Appellant by telling him they had to go to another house. (SX 147). Javier and Appellant picked up Javier's cousin at the house on Redbluff and dropped off Javier's truck. (SX 147). The three men (Javier, Appellant, and Javier's cousin) got into another car and went to a house in Pasadena located at 1808 Dade Street. (SX 147). Javier's cousin parked the car in front of the driveway on the street and the three approached the

house. (SX 147). Javier began shooting through the front door with a shotgun. (SX 147). The occupant opened the door and began shooting back. (SX 147). Appellant exclaimed, "Oh shit I'm hit!" forcing the three men to retreat back to the car and flee the scene. (SX 147). Javier and his cousin dropped Appellant off at Bayshore Hospital where he was approached by Officer Reyes of the Pasadena Police Department. (3 R.R. 99).

### Thorough investigation?

Shortly after the complainant's murder, Houston Police Officer Carl Libby received a call for service to Lucore Sreet while on patrol in southeast Houston around 8:50 that evening. (3 R.R. 34, 36). When he arrived, he noticed an opened door with a body or some kind of obstruction right inside the doorway. (3 R.R. 37). The officer checked the perimeter of the house and secured the scene before calling his sergeant and the homicide unit. (3 R.R. 37).

Once the homicide unit arrived, Officer Holmes with the crime scene unit began evidence collection. (3 R.R. 68). The complainant's house was in disarray like as if there had been a fight or somebody had ransacked the home. (3 R.R. 79). Officer Holmes found 21 bullet casings shot from a .40 caliber and .357 Sig. leading him to believe there were two guns fired, he also found narcotics in a cabinet. (3 R.R. 78-79, 76, 83). Officer Holmes could not testify to whether the guns were shot from inside or outside the home, did not dust the house for fingerprints and did not

order testing DNA collected at the scene.  (3 R.R. 81, 90 - 91).

A traffic stop was conducted on two possible suspects once the initial investigation commenced and evidence collection was taking place.  (3 R.R. 141). The two men, described as Hispanic males, were driving a vehicle similar in description to one of the cars spotted near the Lucore scene.  (3 R.R. 141).  The two men were detained, searched, and consented to a buccal swab before they were released and never heard from again.  (3 R.R. 143, 149).  Interestingly, they were not questioned or detained beyond the brief traffic encounter.  (3 R.R. 141-143, 149).

Homicide Detective Richard Bolton ("the detective") was assigned to investigate the complainant's murder the next morning; at that point in the investigation no suspects had been identified.  (3 R.R. 15).  He travelled back to the Lucore scene to get a feel for what might have happened.  (3 R.R. 116-17).  The complainant's house was riddled with bullet holes and the detective noticed what he thought was a blood smear on the door.  (3 R.R. 118).  Blood testing later determined the red substance was not in fact blood but the red smear gave the detective a hunch that one of the suspects had been, shot leaving blood at the scene.  (3 R.R. 118). Acting on the lead, the detective travelled the path of the freeway to follow what he believed was the path of shooters used when getting away.  (3 R.R. 119).

Meanwhile in Pasadena, Officer Reyes of the Pasadena Police Department received a call for service to Bayshore Hospital regarding a victim that had been

14

shot. (3 R.R. 99). The nurse on duty told the officer a person came in with a bullet wound to the arm and identified Appellant as that person. (3 R.R. 100). Appellant told Officer Reyes he had been on the porch at his house located at 505 Mobile when he heard two gunshots and realized he was shot. (3 R.R. 100-101). In response to Appellant's report, Officer Ontiveros was dispatched to 505 Mobile for a shooting call but did not notice anything out of the ordinary such as shell casings, skid marks or blood evidence. (3 R.R. 111).

After visiting the Lucore scene, and acting on the blood smear hunch, the detective contacted the Pasadena Police Department and inquired into whether a shooting victim had come into any of the Pasadena area hospitals. (3 R.R. 120-21). The detective learned Appellant was treated for a gunshot wound and obtained the police report generated by Officers Reyes and Ointerveros regarding Appellant's gunshot. (3 R.R. 121). The detective next went to Appellant's home address to investigate Appellant as a possible suspect. (3 R.R. 121).

**Appellant Taken into Custody**

The detective was not able to locate Appellant at that time but he talked to Appellant's two brothers. (3 R.R. 122-126). Appellant's brothers gave the detective information leading to Christian Arredondo ("Arredondo"), who they said was helping Appellant flee to Mexico. (3 R.R. 123). Arredondo was contacted by the detective and agreed to allow the detective to listen in and record telephone

15

conversations between Arredondo and Appellant. (3 R.R. 124). On April 23, 2010, the detective set up a police sting at a Home Depot based on the information learned by listening in on the phone calls. (3 R.R. 126). Apparently, Arredondo was supposed to wait for Appellant at the Home Depot and transport him to Mexico. (3 R.R. 125). As Arredondo waited for Appellant, police officers were close by waiting to effectuate the sting. (3 R.R. 127). Once Appellant "rolled into the parking lot" the detective gave the signal and the officers took Appellant into custody. (3 R.R. 128).

### Appellant feels forced to talk

Appellant initially refused to give a statement once in custody. (3 R.R. 126, 128). However, Appellant learned Javier was connected to "some Columbians" and was worried about the safety of his family, so Appellant's mother visited him in jail and convinced him to talk. (3 R.R. 146-147). Based on this information, Appellant's mother contacted the detective who re-initiated contact with Appellant and obtained the statement found in State's Exhibit 147 (SX 147). (3 R.R. 147).

### The trial court allows the confession and the Dade Scene extraneous offense

Before beginning testimony, the trial court heard argument as to why the Dade scene, and the extraneous offense testimony that went along with it, should be introduced before the jury. (3 R.R. 10). The state argued the Dade scene was necessary for the jury's understanding of how the detective was lead to Appellant

16

because "if not for the [detective's] just guess that maybe he would have been shot at the scene he never would have been looking at area hospitals." (3 R.R. 13). The defense argued the scenes were not intermixed and blended, and the Lucore scene would make sense to the jury without mention of the Dade scene. (3 R.R. 17).

The trial court admitted Appellant's statement and allowed the jury to hear the extraneous offense committed at the Dade scene. (3 R.R. 10, 129).

## POINT OF ERROR ONE

## THE TRIAL COURT ERRED BY CHARGING THE JURY ON THE LAW OF PARTIES

## POINT OF ERROR TWO

## SECTION 702(b) OF THE TEXAS PENAL CODE IS UNCONSTITUTIONAL AS APPLIED TO APPELLANT AND FACIALLY UNCONSTITUTIONAL

Appellant's first two points of error depend on identical facts and arguments and will be briefed together to avoid unnecessary repetition.

### A. Standard of review

The jury charge is the means by which a judge instructs the jurors on the applicable law and guides the jury in the law's application to the case. *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012); *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007).

When an appellate court is presented with jury charge error, the court must conduct a two-step inquiry: First, the reviewing court must determine whether the jury charge contains error. Second, the court must determine whether sufficient harm resulted from the error to require reversal. *Vogt v. State*, 421 S.W.3d 233, 239 (Tex. App.—San Antonio 2013, pet. ref'd) (quoting *Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998); *see also Sakil v. State*, 287 S.W.3d 23, 25 (Tex. Crim. App. 2009)). Whether an objection was lodged determines the degree of harm

18

required for reversal. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

## B.  Step One: The inclusion of the law of parties instruction was error

The reviewing court must first determine whether error occurred; if error did not occur, the analysis ends. Appellant asserts the trial court erred by including a law of parties instruction in the jury charge because section 7.02(b) is unconstitutional as applied to Appellant and facially unconstitutional.

## 1.  Section 7.02(b) of the Texas Penal Code is facially unconstitutional and unconstitutional as applied to Appellant

A statute may be challenged as unconstitutional on its face or as applied. *Scott v. State,* 322 S.W.3d 662, 677 n. 2 (Tex. Crim. App. 2010) *abrogated on other grounds by Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014) (citing *Gillenwaters v. State*, 205 S.W.3d 534, 536 n. 2 (Tex. Crim. App. 2006). When a claim is made that a statute is unconstitutional on its face, the claimant is asserting the statute, by its terms, always operates unconstitutionally. *Scott,* 322 S.W.3d at 677 n. 2. On the other hand, a claim a statute is unconstitutional "as applied" is a claim that the statute operates unconstitutionally with respect to the claimant because of his particular circumstances. *Id*. at n. 3.

Since a statute may be valid as applied to one set of facts and invalid as applied to another, the challenger must first show that the statute is unconstitutional as applied to him. *Id*. Showing the statute may be unconstitutional as applied to others is insufficient to support a facial challenge. *Id*. The burden is on the party attacking

the statute to show that it is unconstitutional. *See Texas Mun. League Intergovernmental Risk Pool v. Texas Workers' Comp. Com'n.*, 74 S.W.3d 377, 381 (Tex. 2002) (citing *Texas Pub. Bldg. Auth. v. Mattox*, 686 S.W.2d 924, 927 (Tex.1985)).

## Section 7.02(b) of the Texas Penal Code is unconstitutional as applied to Appellant

Inclusion of the law of parties instruction under § 7.02(b) of the Texas Penal Code was error because § 7.02(b) is unconstitutional as applied to Appellant. A statute is unconstitutional as applied when its application to the claimant deprives him or her of a constitutional right. *In re C.M.D.*, 287 S.W.3d 510, 514 (Tex. App.— Houston [14th Dist.] 2009, no pet.).

To sustain an as applied challenge, the party must show that the statute is unconstitutional when applied to that particular person or set of facts. *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 n. 16 (Tex. 1995). Thus, Appellant is only required to demonstrate section 7.02(b) operates unconstitutionally when applied to his particular circumstances. *Id.*; *In re N.C.M.*, 271 S.W.3d 327, 328–29 (Tex. App.—San Antonio 2008, no pet.). As applied challenges are fact specific and must be brought on a case-by-case basis. *Combs v. STP Nuclear Operating Co.*, 239 S.W.3d 264, 272 (Tex. App.—Austin 2007, pet. denied). Therefore, the reviewing court must evaluate the statute as it operates in practice against the party challenging it. *Texas Mun. League Intergovernmental Risk Pool*, 74 S.W.3d at 381.

In this case, the trial court included an instruction to the jury authorizing a conviction under section 7.02(b) of the Texas Penal Code. (C.R. 156-158). Appellant objected to the inclusion of the charge under the Eighth and Fourteenth Amendments of the United States Constitution and article 1 section 19 of the Texas Constitution. (4 R.R. 10). The law of parties charge under section 7.02(b) of the Texas Penal Code operated unconstitutionally against Appellant because it did not require the state to prove the required *mens rea* for the offense of capital murder mandated by the Eighth and Fourteenth Amendment of the United States Constitution. Section 702(b) is unconstitutionally broad and should not be applied to Appellant, or any other similarly situated defendant, because it dispenses and conflicts with the critical distinction between capital murder and murder by eliminating the *mens rea* requiring the specific intent to kill as required by § 19.03 of the Texas Penal Code. The only evidence connecting Appellant to the crime was his statement. There is no evidence in Appellant's statement indicating intent to kill the complainant. The United States Supreme Court has explained that the Eighth Amendment does not permit the conviction of a defendant who aids and abets a felony during the course of which a murder is committed by someone other than the defendant when the defendant does not himself kill, attempt to kill, or intend the killing that takes place. *Emund v. Florida*, 458 U.S. 782, 797 (1982). In the statement, Appellant never confesses to being the triggerman and there is no

21

evidence showing Appellant acted as a principal.

Therefore, under *Emund v. Florida*, the Eighth Amendment prohibits Appellant's conviction for capital murder based on the law of parties. Accordingly, section 7.02(b) of the Texas Penal Code is unconstitutional as applied to Appellant.

**Section 7.02(b) of the Texas Penal Code is facially unconstitutional**

A claim that a statute is unconstitutional on its face is a claim the statute, by its terms, always operates unconstitutionally. *Scott,* 322 S.W.3d at 677 n. 1 (citing *Gillenwaters*, 205 S.W.3d at 536 n. 3). A party raising a facial challenge to the constitutionality of a statute must demonstrate the statute operates unconstitutionally in all of its applications. *State ex rel. Lykos v. Fine*, 330 S.W.3d 904 (Tex. Crim. App. 2011). The challenger must establish that no set of circumstances exists under which the statute will be valid. *Retzlaff v. GoAmerica Communications Corp.*, 356 S.W.3d 689, 702 (Tex. App.—El Paso 2011, no pet.).

A person may be guilty as a party to capital murder if the defendant committed the offense by his own conduct or by the conduct of another for which he is criminally responsible. TEX. PENAL CODE ANN. § 7.01(a) (West 2011); *see Gross v. State,* 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). "If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the

unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy." TEX. PENAL CODE ANN. § 7.02(b) (West 2011).  A defendant in a capital murder case may be convicted solely on a conspiracy theory of culpability contained in the jury charge. *Love v. State,* 199 S.W.3d 447, 452 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (citing *Fuller v. State,* 827 S.W.2d 919, 932–33 (Tex. Crim. App. 1992)).  Inclusion of the law of parties instruction under § 7.02(b) of the Texas Penal Code was error because § 7.02(b) does not require the state to prove the required *mens rea* for the offense of capital murder required under *Edmund v. Florida* discussed *supra*.  Therefore, section 7.02(b) is facially unconstitutional.

Because section 7.02(b) of the Texas Penal Code is unconstitutional as applied to Appellant and unconstitutional on its face, the inclusion of the law of a parties instruction in the jury charge was error.

## C.     Step two: Determine whether Appellant suffered some harm

If an appellate court finds an error in the jury charge, the question of which standard of harm applies is dependent upon whether an objection was lodged. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994).  "Where there has been a timely objection made at trial, an appellate court will search for only some harm. *Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998).  By contrast, where the error is urged for the first time on appeal, a reviewing court will search

23

for 'egregious harm'.  *Id*; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)(op. on reh'g).

Trial counsel for Appellant objected on the record to the inclusion of the law of parties instruction.  (4 R.R. 10).  Because the error was properly objected to by Appellant's trial counsel, the conviction must be reversed if the error was calculated to injure the rights of the defendant. *See* TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).  This standard requires proof of no more than some harm to the accused from the error.  *Almanza*, 686 S.W.2d at 171.  In conducting its analysis, the court must consider: (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013)).  This less-stringent standard still requires the reviewing court to find the defendant suffered some actual, rather than merely theoretical, harm from the error.  *Id*. (quoting *Warner v. State*, 245 S.W.3d 458, 462 (Tex. Crim. App. 2008)).

In reviewing the jury charge as a whole, the jury charge authorized a conviction predicated upon the law of parties, which as discussed *supra*, operated unconstitutionally as applied to Appellant and is facially unconstitutional.  The application paragraphs allowed for a conviction under three theories of capital

murder: (1) as a principal, (2) as a party, or (3) as a co-conspirator. (C.R 158 - 160). It is clear Appellant suffered some harm from the error because it provided alternative manners and means of conviction. Inclusion of the charge also lowered the state's burden of proof because it did not require proof beyond a reasonable doubt of the specific intent to kill. When the jury was faced with such a weak case entirely dependent on Appellant's statement case, inclusion of multiple manner and means of conviction harmed Appellant by allowing the jury to convict based on his statement alone. In reviewing the arguments of counsel, the state's theory of the case was predicated upon proving Appellant was "both a party and a co-conspirator." (4 R.R. 50). The state argued, "They were going to shoot up the house, [while] he searched for the stuff. That is a party." (4 R.R. 48). This argument shows without the instruction the state would have been limited to arguing Appellant was guilty as a principal only, which was not raised by the evidence.

When reviewing the entirety of the evidence, the state presented a limited number of witnesses and the scope of Appellant's involvement was only made clear through his own statement. In reviewing Woodman's testimony, she was only able to testify that she saw two men and, notably, did not identify Appellant. There is no evidence in the record describing Appellant's appearance so the jury was essentially left guessing as to whether he was the short man or tall man Woodman described.

When viewing the charge as a whole, it is apparent the jury charge was

25

calculated to injure the rights of Appellant. As a result, Appellant suffered some harm.

Therefore, the trial court erred by instructing the jury on the law of parties and Appellant suffered some harm. Accordingly, the judgment should be reversed and the cause remanded for a new trial.

<u>**POINT OF ERROR THREE**</u>

**THE TRIAL COURT ERRED BY ADMITTING EXTRANEOUS OFFENSE TESTIMONY OVER APPELLANT'S OBJECTION**

**A.      Standard of review**

Rulings on relevance should be left largely to the trial court, relying on its own observations and experience, and will not be reversed absent an abuse of discretion. *Salazar v. State*, 38 S.W.3d 141, 153 (Tex. Crim. App. 2001); *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993). If the trial court's ruling was within the "zone of reasonable disagreement," then there is no abuse of discretion, and the appellate court must uphold the trial court's ruling. *Moreno*, 858 S.W.2d at 463.

**B.      The trial court's admission of the Dade scene extraneous offense testimony was error and the trial court abused its discretion**

Rule 404(b) embodies the established principle that a defendant is not to be tried for collateral crimes or for being a criminal generally. *Sanders v. State*, 255 S.W.3d 754, 757 (Tex. App.—Fort Worth 2008, pet. ref'd) (citing Tex. R. Evid.

404(b); *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992));

Consequently, evidence of extraneous offenses is not admissible at the guilt-innocence phase of trial to prove that a defendant acted in conformity with his character by committing the charged offense. *Sanders*, 255 S.W.3d at 757; TEX. R. EVID. 404(b) (West 2013). Same transaction contextual evidence is; however, admissible as an exception under Rule 404(b) where such evidence is necessary to the jury's understanding of the instant offense. *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993).

Evidence of another crime, wrong, or act may be admissible as same-transaction contextual evidence where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others." *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000) (quoting *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)).

The jury is entitled to know all relevant surrounding facts and circumstances of the charged offense. *Id*. But, under Rule 404(b), same-transaction contextual evidence is admissible only when the offense would make little or no sense without also bringing in that evidence, and it is admissible "only to the extent that it is necessary to the jury's understanding of the offense." *Id*. (quoting *Pondexter v. State*,

942 S.W.2d 577, 584 (Tex. Crim. App. 1996)).

In this case, the trial court admitted Appellant's statement containing extraneous offense evidence under the theory that the Dade scene, the street where the second robbery took place, was same transaction contextual evidence. (3 R.R. 10, 129). Appellant complains the trial court erred by admitting the evidence.

Before beginning testimony, the trial court heard argument as to why the Dade scene, and the extraneous offense testimony that goes along with it, should be introduced before the jury. (3 R.R. 10). The state argued under *Rogers v. State*, 853 S.W.2d 29 (Tex. Crim App. 1993) the Dade scene was necessary for the jury's understanding of how the detective was lead to Appellant because "if not for the [detective's] just guess that maybe he would have been shot at the scene he never would have been looking at area hospitals." (3 R.R. 13). The State further argued if the Dade scene evidence was not admitted the state would not be able to show the jury how Appellant ever became a suspect. (3 R.R. 14).

Admitting evidence of the Dade scene was error because the complainant's murder, the offense Appellant was on trial for, would have made sense without bringing the Dade scene before the jury. Same transaction contextual evidence is only admissible to the extent that it is necessary to the jury's understanding of the offense. In this case, the detective had a hunch someone was shot during the complainant's murder. The detective testified he thought he recognized blood at the

28

Lucore scene, where the complainant was murdered, not at the Dade scene, where the extraneous offense took place. The way the detective was lead to Appellant would have made still sense to the jury without mention of the Dade scene because the jury could have believed Appellant was shot at the Lucore scene and was dropped off by Javier and his cousin at Bayshore Hospital after he was shot. This would have allowed the state to show how Appellant became a suspect without admitting the Dade scene evidence.

In *Rogers*, the court found error when "the State could have described the events of appellant's arrest without mentioning that marijuana was found, in addition to methamphetamine . . . [because] [t]he jury's understanding of the instant offenses would not have been impaired or clouded had the State described appellant's arrest without including the evidence concerning the marijuana." *Rogers*, 853 S.W.2d at 34. Similarly, in this case the state could have described Appellant's arrest without mentioning the Dade scene, in addition to the complainant's murder. In addition, omission of the Dade scene would not have caused the evidence to appear incomplete because like in *Rogers*, the jury's understanding of the instant offense would not have been clouded or impaired had the state described how the detective was led to Appellant without reference to the Dade scene.

Further, the two scenes were not so intermixed or blended as to create an indivisible criminal offense. *See Wyatt*, 23 S.W.3d at 25. In his statement, Appellant

describes a break in the action of at least two to three hours. There is no evidence the Dade scene complainant and the Lucore complainant were in any way related. Appellant also explains his lack of understanding of the scope of Javier's plans when he seemed surprised to find the three men were going to another house. (SX 147). This lead to the conclusion that the two scenes were not connected in anyway, at least in the eyes of Appellant, and is consistent with the evidence presented at trial.

Because the two scenes were not intermixed or blended and the complainant's murder would have made sense to the jury without the trial court admitting the Dade scene the extraneous offense as same transaction contextual evidence was error and the trial court abused its discretion.

**The probative value of the Dade scene evidence, if admissible, was substantially outweighed by the danger of its unfair prejudice.**

Appellant incorporates the facts referenced in Section A of this point of error into this section. Evidence that is relevant under rule 404(b) is subject to exclusion if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403; *Poole v. State*, 974 S.W.2d 892, 897 (Tex. App.—Austin 1998, pet. ref'd). Only "unfair" prejudice provides the basis for exclusion of relevant evidence. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990). Unfair prejudice arises from evidence that has an undue tendency to suggest that a decision be made on an improper basis, commonly an emotional one. *Id*.

When a defendant makes a Rule 403 objection, the trial court has a

nondiscretionary obligation to weigh the probative value of the evidence against the unfair prejudice of its admission. *Id.* In overruling such an objection, the trial court is assumed to have applied a Rule 403 balancing test and determined the evidence was admissible. *See Poole*, 974 S.W.2d at 897 (Tex. App.—Austin 1998, pet. ref'd); *Yates v. State*, 941 S.W.2d 357, 367 (Tex. App.—Waco 1997, pet. ref'd); *Caballero v. State*, 919 S.W.2d 919, 922 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).

An appellate court must measure the trial court's balancing determination against the relevant criteria by which a Rule 403 decision is made. *Yates*, 941 S.W.2d at 367. The relevant criteria in determining whether the prejudice of an extraneous offense substantially outweighs its probative value include: (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense; (2) the potential the other offense evidence has to impress the fact finder "in some irrational but nevertheless indelible way"; (3) the time the proponent will need to develop the evidence, during which the fact finder will be distracted from consideration of the indicted offense; and (4) the force of the proponent's need for this evidence to prove a fact of consequence, that is, does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute. *Id.* (citing *Montgomery*, 810 S.W.2d at 389–90).

31

When the relevant criteria are viewed objectively and lead to the conclusion that the danger of unfair prejudice substantially outweighs the probative value of the proffered evidence, the appellate court should declare that the trial court erred by failing to exclude it. *Curtis v. State*, 89 S.W.3d 163, 170 (Tex. App.—Fort Worth 2002, pet. ref'd) (citing *Montgomery*, 810 S.W.2d at 392).

Even if the extraneous offense Dade scene evidence was relevant as same transaction contextual evidence, its probative value was substantially outweighed by the danger of unfair prejudice. Rule 403 calls for the balancing of four relevant factors. The four factors are an examination of how compelling the extraneous offense was in showing Appellant's guilt in committing the charged offense. Here, the indictment charges Appellant with the capital murder of the complainant. Evidence Appellant was involved in another offense at the Dade scene with almost identical facts, when the alleged location was the Lucore scene does not make it more likely that Appellant committed the complainant's murder. Appellant asserts that he was convicted on the basis of the extraneous offense evidence contained in his statement. The fourth factor also weighs heavily in Appellant's favor. Review should focus on the State's need for the testimony. Here, as discussed *supra* the State did not need to develop the extraneous offense evidence because Appellant's wound could have been attributed to the red "blood" smear found at the Lucore scene where the complainant was shot.

When viewed objectively the relevant criterion leads to the conclusion that the danger of the Dade scene extraneous offense evidence's unfair prejudice is substantially outweighed by its probative value. Accordingly, it was error for the trial court to admit the Dade scene extraneous offense evidence under the theory it was same transaction contextual evidence.

## B. Appellant's substantial rights were affected

When a trial court erroneously admits evidence of extraneous offenses, the error is reviewed under the non-constitutional harmless error standard. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *see* TEX. R. APP. P. 44.2(b) (West 2011). In such cases, the court will reverse only if the error impacted Appellant's substantial rights. TEX. R. APP. P. 44.2(b) (West 2011). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). The court, after examining the entire record, must have a fair assurance that the error did not influence the jury, or had but a slight effect. *Johnson*, 967 S.W.2d at 417.

In assessing whether the jury's decision was adversely affected by the error, the court must consider everything in the record, including testimony and physical evidence, the nature of the evidence supporting the verdict, and the character of the error and how it might be considered in connection with the other evidence in the

33

case. *Higginbotham v. State*, 356 S.W.3d 584, 592 (Tex. App.—Texarkana 2011, pet. ref'd). The court also considers the court's charge to the jury, the State's theory, any defensive theories, closing arguments, and voir dire, if material to Appellant's claim. *Id.*

In reviewing the record as a whole there was no legitimate reason to admit the testimony as it had no bearing on complainant's murder and was irrelevant to explain how the police eventually caught up with Appellant. Further, if the Dade scene evidence was relevant, its probative value was substantially outweighed by its prejudicial value and resulted in an improper conviction for capital murder when the evidence did not rise to that level. Appellant asserts the state knew they had a mostly circumstantial case supported largely by Appellant's confession. Admission of the extraneous offense evidence from the Dade scene gave the jury something to hang their hat on by assuring the jurors that if Appellant was not guilty of the acts committed at the Lucore scene he was certainly guilty of the acts committed at the Dade scene.

In viewing the entire case against Appellant, the trial court's error in admitting the testimony in question had a substantial and injurious effect on the trial court's verdict and therefore affected Appellant's substantial rights. Accordingly, the judgment should be reversed and the cause remanded for a new trial.

## POINT OF ERROR FOUR

**THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT APPELLANT'S CAPITAL MURDER CONVICTION**

**A.     Legal sufficiency standard of review**

The appellate court's review is limited to applying the legal sufficiency standard discussed in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) (plurality opinion)). Under the *Jackson* standard, evidence is insufficient to support a conviction if when considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 317; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72

L.Ed.2d 652 (1982)).

**B.      Elements of capital murder**

The indictment alleges that on or about the 8th day of April, 2010, in Harris County, Texas, Appellant did then an there unlawfully, while in the course of committing and attempting to commit the robbery of Andres Gonzalez, intentionally cause the death of Andres Gonzalez by shooting Andres Gonzalez with a deadly weapon, namely a firearm and Appellant was found guilty of capital murder. (C.R. 8; 169-70).

Section 19.02(b) of the Texas Penal Code provides a person commits capital murder if he intentionally causes the death of an individual in the course of committing or attempting to commit robbery. TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(2) (West 2011). A person commits robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a)(1)-(2) (West 2011). Theft is the unlawful appropriation of property with the intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03 (West 2011). Appropriation of property is unlawful if it is without the owner's effective consent. *Id*.; TEX. PENAL CODE ANN. 31.03(B)(1).

36

## C. The evidence is legally insufficient

A person may be guilty as a party to capital murder if the defendant committed the offense by his own conduct or by the conduct of another for which he is criminally responsible. TEX. PENAL CODE ANN. § 7.01(a) (West 2011); *see Gross v. State,* 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). "If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy." TEX. PENAL CODE ANN. § 7.02(b) (West 2011). A defendant in a capital murder case may be convicted solely on a conspiracy theory of culpability contained in the jury charge. *Love v. State,* 199 S.W.3d 447, 452 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (citing *Fuller v. State,* 827 S.W.2d 919, 932–33 (Tex. Crim. App. 1992)). Therefore, the State is not required to present evidence of a defendant's intent to kill as long as the evidence establishes that a felony was committed as a result of a conspiracy and the murder should have been anticipated in carrying out the conspiracy to commit the underlying felony. *Ruiz v. State,* 579 S. W.2d 206, 209 (Tex. Crim. App. [Panel Op.] 1979).

There is no evidence establishing a felony was committed as a result of a conspiracy because Appellant's confession is not sufficiently corroborated and the

evidence is legally insufficient to establish Appellant is the person who committed the offense charged absent the confession. The State must prove beyond a reasonable doubt that the defendant is the person who committed the offense charged. *See Miller v. State,* 667 S.W.2d 773, 775 (Tex.Crim.App.1984); *Wiggins v. State,* 255 S.W.3d 766, 771 (Tex. App.—Texarkana 2008, no pet.). Identity may be proved by direct evidence or circumstantial evidence, including DNA evidence, or reasonable inferences from such evidence. *See Gardner v. State,* 306 S.W.3d 274, 285 (Tex. Crim. App. 2009); *Orellana v. State,* 381 S.W.3d 645, 653 (Tex. App.—San Antonio 2012, pet. ref'd); *Roberson v. State,* 16 S.W.3d 156, 167 (Tex. App.—Austin 2006, pet. ref'd).

In this case, no DNA, fingerprint, or other identity evidence exists. Woodman was the only eyewitness to the complainant's murder and she testified while she was watching TV she heard gunshots and rushed out to the front porch. She heard another burst of gunshots and saw two men running from the complainant's house over to the getaway cars. Woodman never described the appearances of the two men and failed to identify Appellant as one of the two men. The only evidence connecting Appellant to the crime was his own confession. However, a conviction cannot be sustained upon Appellant's statement alone without sufficient corroboration evidence. It has long been the law in Texas that an extrajudicial confession or statement is insufficient to support a conviction absent corroboration.

38

*See Bordman v. State,* 56 S.W.3d 63, 71 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). The evidence does not corroborate appellant's statement because there is no evidence, other than Appellant's own statement, to establish Appellant participated in the murder or robbery of the complainant. The testimony of Woodman, the only eyewitness to testify, is insufficient to establish Appellant as one of men shooting at the complainant's house. Woodman was not able to see the face of either man and she did not identify Appellant as either the short or tall man. (3 R.R. 49). Therefore the evidence is insufficient to establish a felony was committed as a result of the conspiracy.

There is also insufficient evidence establishing Appellant committed robbery because there is no evidence Appellant unlawfully appropriated property with intent to deprive the owner of the property. To establish the offense of Robbery, the state was required to prove, beyond a reasonable doubt, Appellant unlawfully appropriated property with the intent to deprive complainant of the property. Woodman, as the only eyewitness, did not testify either of the men she saw at the complainant's house carried off any property and not one of the law enforcement witnesses testified any property was missing or unlawfully appropriated. Therefore, the evidence is insufficient to establish Appellant committed a robbery, which was an essential element of the offense of capital murder.

Considering all of the record evidence in the light most favorable to the

verdict no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. Therefore the evidence is legally insufficient to support the conviction and Appellant requests that the judgment be reversed and an order of acquittal be entered. *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

## **PRAYER FOR RELIEF**

Appellant prays that this Honorable Court sustain the points of error presented and requests this Honorable Court reverse the judgment of the trial court and render a judgment of acquittal, or in the alternative reverse the judgment of the trial court and remand this case for a new trial. Appellant further requests any other relief to which he may be legally entitled.

Respectfully submitted,

*/s/ Nicole DeBorde*
NICOLE DEBORDE
Texas Bar No. 00787344
JPMorgan Chase Bank Building
712 Main Street, Suite 2400
Houston, Texas 77002
(713) 228-8500
(713) 228-0034 fax
Email: Nicole@BSDLawFirm.com

Attorney for Appellant, Florencio Leal

40

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon Alan Curry, Assistant District Attorney of Harris County, Texas, on the 13th day of August 2015, by email:  curry_alan@dao.hctx.net.


/s/  Nicole DeBorde
NICOLE DEBORDE

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9 of the Texas Rules of Appellant Procedure, the undersigned counsel of record certifies that Appellant's brief contains 8488 words.

*/s/ Nicole DeBorde*
NICOLE DEBORDE